PAUL T. TRIMMER
Nevada Bar No. 9291
JOSHUA A. SLIKER
Nevada Bar No. 12493
LYNN K. MCCHRYSTAL
Nevada State Bar No. 14739
**JACKSON LEWIS P.C.**
300 S. Fourth Street, Ste. 900
Las Vegas, Nevada 89101
Telephone: (702) 921-2460
Facsimile: (702) 921-2461
Email: paul.trimmer@jacksonlewis.com
joshua.sliker@jacksonlewis.com
lynn.mcchrystal@jacksonlewis.com

*Attorneys for Defendants*
*The Signature Condominiums, LLC, and Bellagio, LLC*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| LOCAL JOINT EXECUTIVE BOARD OF LAS VEGAS,<br><br>Plaintiff,<br><br>vs.<br><br>HARRAH'S LAS VEGAS, LLC; THE SIGNATURE CONDOMINIUMS, LLC; BELLAGIO, LLC,<br><br>Defendants. | Case No.: 2:20-cv-01221-RJB-NJK<br><br>**DEFENDANTS' THE SIGNATURE CONDOMINIUMS, LLC'S AND BELLAGIO, LLC'S MOTION TO DISMISS OR IN THE ALTERNATIVE TO SEVER**<br><br>**Oral Argument Requested** |

Defendants The Signature Condominiums, LLC ("Signature") and Bellagio, LLC ("Bellagio") (collectively, "Defendants"), by and through their attorneys, the law firm of Jackson Lewis P.C., hereby submit the instant Motion to Dismiss or In The Alternative to Sever Plaintiff's claims against them from those asserted against Harrah's' Las Vegas, LLC ("Harrah's") pursuant to Rules 20 and 21 of the Federal Rules of Civil Procedure. This Motion is based on the following Memorandum of Points and Authorities, all pleadings and documents on file with the Court, and any oral argument the Court deems proper.

## I. INTRODUCTION

For more than a decade, Plaintiff Local Joint Executive Board of Las Vegas ("Plaintiff" or the "Union") and Defendants Signature and Bellagio have worked together, through their respective collective bargaining relationships, to address issues arising in the workplace. While Plaintiff and Defendants do not always see eye to eye, the relationship has been successful because of the mutual respect and cooperation even when confronting unprecedented circumstances. The instant lawsuit circumvents the collective bargaining process and mutually agreed to dispute resolution procedures, and as will be set forth in more detail in a subsequent motion, the lawsuit has no merit.

Although Plaintiff's lawsuit asserts that time is of the essence, neither Signature nor Bellagio have been served. Defendants learned of the lawsuit via Plaintiff's news conference. The Union has not contacted Signature or Bellagio to discuss its claims. Indeed, while the purported purpose of the lawsuit is to obtain injunctive relief pending the outcome of the parties' respective grievance and arbitration process, there is no dispute that the Union: 1) has abandoned both negotiations and other informal attempts to address work place safety concerns, 2) did not file its grievance until Thursday, June 25, 2020, 3) has not pursued the mandatory Board of Adjustment required by the grievance and arbitration procedure in the collective bargaining agreements, 4) that Bellagio and Signature have contacted Plaintiff both to schedule the Boards of Adjustment and schedule, if necessary, an arbitration hearing on July 21 – 24, 2020, but the Union has not responded; and 5) despite the Union's decision to disengage from the process, that Bellagio and Signature have implemented health and safety policies and procedures which are designed to help keep employees and guests safe and which exceed applicable government requirements. In short, and based on the above facts, the lawsuit is meritless and subject to dismissal, much like a similar lawsuit dismissed in the Southern District of New York just weeks ago. *See N.Y. State Nurses Ass'n v. Montefiore Med. Ctr.*, 2020 U.S. Dist. LEXIS 77659, *6-8 (S.D.N.Y. May 1, 2020). As that court explained, the relief requested in a complaint like the one at issue here would "**turn the purpose of a reverse *Boys Markets* injunction — to protect the integrity of the arbitral process — on its head.**" *Id.* **(emphasis added).**

In any event, Bellagio and Signature will address the substance of Plaintiff's lawsuit shortly. This Motion concerns Plaintiff's obviously improper decision to join three different corporate defendants, and Defendants are filing the Motion now, before being served and before further motion practice, to ensure that the record before the Court is accurate, clear and precise. Each of the defendants has its own collective bargaining agreement with the Union, and the face of the Complaint, *see* Paragraphs 14-84, makes it clear that the Union's allegations against the three defendants do not arise out of the same transaction or occurrence as required by Fed. R. Civ. P. 20(a). The Complaint should therefore be dismissed, and Plaintiff should be instructed to file a proper complaint with specific allegations as to each relevant defendant. In the alternative, the Court could sever the matter into different cases and order Plaintiff to amend its Complaint.

## II.     FACTUAL BACKGROUND

### A.     Background Regarding Defendants.

Defendant Signature is an all-suite resort consisting of three towers containing approximately 1,700 rental units located at 145 East Harmon Avenue in Las Vegas, Nevada. ECF No. 1, ¶ 29. Defendant Bellagio is a hotel-casino property with 3,950 rooms located at 3600 South Las Vegas Boulevard in Las Vegas, Nevada. *Id.* at ¶ 68. Both Defendants have a collective bargaining relationship with Plaintiff. *See* Signature Collective Bargaining Agreement, **Exhibit 1**; Bellagio Collective Bargaining Agreement, **Exhibit 2**. Signature and Bellagio are subsidiaries of MGM Resorts International (MGMRI).[1]

Defendant Harrah's is a hotel-casino located at 3475 South Las Vegas Boulevard in Las Vegas, Nevada and is a subsidiary of Caesars Entertainment Corporation. Neither Signature,

---

[1] The currently collective bargaining agreements between the Union and Bellagio and Signature, were negotiated in 2018 and 2019, respectively, and they expire in 2023. They were not attached to the Complaint. Those agreements, however, have not been completely reduced to writing. The prior agreements are therefore attached. For purposes of this Motion, the prior agreements establish that each entity has its own collective bargaining relationship with the Union and the collection of tentative agreements which comprise current agreements is not necessary. Those tentative agreements may prove necessary for subsequent motion practice and they will be introduced at that time. With respect to Exhibits 1, 2 and 3, because the collective bargaining agreements are over 100 pages long, the attached exhibits include only the first eight pages and the recognition clauses.

Bellagio or MGMRI have any ownership or other interest in Harrah's, nor have any responsibility for or role in promulgating or enforcing any policies or procedures regarding Harrah's employees. Harrah's has a separate collective bargaining agreement with Plaintiff. *See* Harrah's Collective Bargaining Agreement, **Exhibit 3**. To be sure, Harrah's has no ownership or other interest in Signature or Bellagio and does not have any responsibility for or role in promulgating or enforcing any policies or procedures regarding Signature's or Bellagio's respective employees.

### B. History Regarding the Instant Dispute.

In early March of this year, Defendants Bellagio, Signature and all other MGM Resorts International (MGMRI) subsidiaries approached Plaintiff's leadership, prior to Nevada Governor Steve Sisolak's mandated closures, to begin discussing COVID-19 and the various steps that MGMRI, including Defendants Signature and Bellagio, and the Union would need to take to protect employees and customers. In the midst of the rapidly evolving situation presented by the pandemic, Bellagio, Signature and all other MGMRI subsidiaries appreciated that temporary closures could prove necessary and proceeded to cease operations prior to Governor Sisolak's mandatory closures.

MGMRI engaged nationally respected health and safety experts to assist it in developing and implementing its health and safety protocols. Its Seven Point Safety Plan, which has been provided to the Union and which is also available online, establishes employee and guest safety standards and procedures which both exceed governmental requirements and are at the forefront of the industry. To that end, MGMRI, on behalf of its subsidiaries including Defendant Signature and Bellagio, engaged the Union in dialogue and negotiation about various issues arising as a result of COVID-19, including health and safety rules and procedures, health and welfare benefit contributions, and the process through which each property might be reopened and employees can return to work and resume earning a living. Although those discussions have not yet produced a final agreement, they were in good faith and proceeding in a manner consistent with the long and peaceful relationship between the Union and Defendants Signature and Bellagio. Indeed, there was substantial and productive back and forth regarding health and safety proposals in mutual

recognition of the value that safely reopening the property had for employees, the public and the state of Nevada.[2]

At the end of May 2020, however, the character of those discussions changed. On May 28, 2020, Plaintiff abruptly, and without prior notice, stopped negotiating over health and safety proposals. Plaintiff pulled that issue off the negotiating table and asserted that all hotel-casinos should be subject to universal standards promulgated by state government. Further, the Culinary Health and Welfare fund notified MGM Resorts on June 2, 2020, that it would discontinue COVID-19 testing just as Defendants Bellagio, Signature, and other MGMRI properties were preparing to reopen.

To be sure, Plaintiff has never proposed rules and standards like those identified in Paragraph 88 of Plaintiff's Complaint. Nor, until it for the first time filed two grievances last Thursday, June 25, 2020, had the Union contended that Bellagio or Signature's health and safety policies – the policies that the Union removed from discussion on May 28, 2020 – violated the applicable collective bargaining agreements. Indeed, although Plaintiff now contends that the issues presented in the grievances require immediate attention, Plaintiff sent those grievances to a general MGM Resorts email inbox, and did not attempt to expedite the process by contacting any of the labor relations executives with whom it deals with on a regular, if not daily, basis. In other words, Plaintiff raised no objection to Defendants' policies until four calendar days (two of which were on the weekend) before filing the instant matter and did so in a manner to obfuscate the fact that the grievances had been filed only four days earlier – leaving no time for the parties to process the grievances in accordance with the agreed upon dispute resolution procedures.

**C.   Plaintiff's Allegations.**

Plaintiff's Complaint refers to three separate events that allegedly occurred, singularly, at each defendant. Regarding Signature, Plaintiff alleges that two employees working as Bell Persons and Valets tested positive for COVID-19 on June 11th and 14th, respectively, and claims three other

---

[2] Indeed, the Culinary Health and Welfare insurance fund, for a period during the shutdown, provided COVID-19 testing to participating employees, which the Company paid for so there was no cost to the Union or employees.

Valets and Bell Persons have tested positive since Signature reopened on June 4, 2020. ECF No. 1, ¶ 33, ¶ 38, and ¶ 44. Plaintiff also alleges that Bell Persons have interactions with guests that last in excess of 15 minutes and that do not comply with social distancing guidelines, and that Valets park and retrieve approximately 60-100 guest cars per day and cannot ventilate and sanitize each vehicle. *Id.* at ¶¶ 31-33. Further, Plaintiff alleges that various Signature employees had contact with Signature's managers and Human Resources personnel regarding their COVID-19 test results or concerns about other employees testing positive and that those individuals did not respond in the manner Plaintiff believes was appropriate. *Id.* at ¶ 37, ¶ 39, ¶¶ 40-42, and ¶¶ 44-50.

With respect to Bellagio, Plaintiff alleges that a Food Runner working at Sadelle's Café (inside Bellagio) tested positive for COVID-19 on or about June 11th, and a Cook later tested positive on June 24, 2020. *Id.* at ¶¶ 72 and 78. Plaintiff alleges that the kitchen facilities are small and do not allow employees to stay six feet apart from each other. *Id.* at ¶ 72. In addition, Plaintiff alleges that Bellagio management did not inform employees that a co-worker had tested positive in a timely manner, despite alleging that Cooks were informed on June 24th of their co-worker's positive result. *Id.* at ¶ 74, ¶ 79 and ¶ 81. Plaintiff also alleges that Bellagio did not close down the restaurant or other workstations where the positive employees may have worked for deep cleaning. *Id.* at ¶ 84.

Regarding Harrah's, Plaintiff alleges a Food Runner working at Guy Fieri restaurant tested positive for COVID-19 on June 18, 2020. *Id.* at ¶ 58. Plaintiff also alleges that the Food Runner informed some employees of his positive result, and before Harrah's could inform potentially affected employees, the restaurant employees confronted their managers about the information. *Id.* at ¶ 61. Further, Plaintiff claims that Harrah's ignored employees with underlying medical conditions who might be more susceptible to COVID-19 infection. *Id.* at ¶ 61. Additionally, Plaintiff alleges the restaurant shutdown on June 19, 2020 because "workers courageously elected not to work and instead to be tested." *Id.* at ¶¶ 66-67.

JACKSON LEWIS P.C.
LAS VEGAS

6

### III. LEGAL ARGUMENT

**Joinder of Harrah's With Signature and Bellagio is Not Appropriate**

Rule 20(a)(2) of the Federal Rules of Civil Procedure provides that in order for more than one defendant to be joined together in an action, two specific requirements must be met: "(1) the right to relief asserted against each defendant must arise out of or relate to the same transaction or occurrence or series of transactions or occurrences; and (2) a question of law or fact common to all defendants must arise in the action." *Fed. Hous. Fin. Agency v. Las Vegas Dev. Grp., LLC*, No. 2:16-cv-1187-GMN-CWH, 2017 U.S. Dist. LEXIS 146457, at *3 (D. Nev. Sep. 11, 2017) (citing FRCP 20(a)(2)). Besides these requirements, district courts must also determine if permissive joinder "'comport[s] with the principles of fundamental fairness'" or will prejudice either side. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1296 (9th Cir. 2000) (quoting *Desert Empire Bank v. Ins. Co. of N. Am.*, 623 F.2d 1371, 1375 (9th Cir. 1980)).

"If the test for permissive joinder is not satisfied, a court, in its discretion, may sever the misjoined parties, so long as no substantial right will be prejudiced by the severance." *Id.* (quoting *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997)); *see* FRCP 21. Notably, "[e]ven when a plaintiff shows that the joined defendants meet the test for permissive joinder, the court still has discretion to sever under Federal Rules of Civil Procedure 20(b), 21 and 42(b)."*POW Nev., LLC v. Doe*, No. C17-1649RSM, 2018 U.S. Dist. LEXIS 11708, at *2 (W.D. Wash. Jan. 24, 2018) (citing *On the Cheap, LLC v. Does 1-5011*, 280 F.R.D. 500, 503 (N.D. Cal. 2011)). "If the district court chooses to sever the case, it may do so by dismissing 'all but the first named [defendant] without prejudice to the institution of new, separate lawsuits [against] the dropped [defendants]." *Fed. Hous. Fin. Agency*, 2017 U.S. Dist. LEXIS 146457, at *3 (quoting *Coughlin*, 130 F.3d at 1350).

**A. Plaintiff's "Right to Relief" Does Not Arise Out of or Relate to the Same Transaction or Series of Events.**

The first prong of the permissive joinder test refers to the "similarity in the factual background" of the claims. *Coughlin*, 130 F.3d at 1350. There is no bright-line definition of a "transaction" "occurrence" or "series"; courts instead assess the facts of each case to determine whether joinder is appropriate in light of the policies underlying permissive joinder. *See id.* at 1350.

Here, Plaintiff names all three Defendants ostensibly on the basis that because Plaintiff is challenging policies related to COVID-19, its claims arise from or relate to the same transaction or series. That is simply not the case. Rather, Plaintiff's claims arise out of different events that occurred at each Defendant involving different employees, different Defendants, and different circumstances. *See Spaeth v. Mich. State Univ. Coll. of Law*, 845 F. Supp. 2d 48, 53 (D.D.C. 2012) (stating that plaintiff "'cannot join defendants who *simply engaged in similar types of behavior*, but who are otherwise unrelated [and that] some allegation of concerted action between defendants is required'"; *i.e.*, "'[c]ourts have not joined totally independent actors, without any allegation of concert or conspiracy'") (emphasis added); *see also In re EMC Corp.*, 677 F.3d 1351, 1359 (Fed. Cir. 2012) (stating that "[c]laims against independent defendants (i.e., situations in which the defendants are not acting in concert) cannot be joined under Rule 20's transaction-or-occurrence test unless the facts underlying the claim of infringement asserted against each defendant share an aggregate of operative facts"); *Yocom v. Grounds*, No. C 11-5741 SBA (PR), 2013 U.S. Dist. LEXIS 144102, at *5 (N.D. Cal. Sep. 30, 2013) ("Mere proximity in time and similarity in the types of problems . . . are not enough to satisfy Rule 20(a)(2).").

If Plaintiff were permitted to join Signature, Bellagio and Harrah's based on the allegations in the Complaint, Rule 20 would have no limit and no effect.  There is no more commonality here than three people who each are involved in separate automobile accidents on different dates yet happen to drive the same make and model of car.  Indeed, Plaintiff's claims depend on a host of individualized issues including, but not limited to, the nuances of the particular workplace, the different policies and procedures in effect at each Defendant's property, and the duties and responsibilities of each job at issue. Thus, Plaintiff cannot meet the first prong and Defendants Signature and Bellagio should be dismissed, or alternatively, severed from the case. *See George v. Smith*, 507 F.3d 605, 607 (9th Cir. 2007) ("[u]nrelated claims against different defendants belong in different suits").

### B. There is No Question of Law or Fact Common to all Defendants That Arises in This Action.

Plaintiff's Complaint presents no question of law or fact that is common to all of the Defendants. Plaintiff appears to believe joinder of all three Defendants in one action is appropriate because the claims concern Defendants' respective COVID 19 policies and procedures. However, this is insufficient. "[T]he mere fact that all Plaintiff['s] claims arise under the same general law does not necessarily establish a common question of law or fact." *Coughlin*, 130 F.3d at 1351. The nature of Defendants' respective policies and procedures regarding health and safety of employees and the notice given to their respective employees concerning positive tests of other employees are discrete and specific to each Defendant. Indeed, even if the Defendants were not severed, the Court would still have to give each claim individualized attention. Therefore, the claims do not involve common questions of law or fact." *Id.*; *see also Visendi v. Bank of Am., N.A.*, 733 F.3d 863, 870 (9th Cir. 2013) (holding that plaintiffs' merely alleging that the defendants violated the same laws in comparable ways was insufficient under Rule 20(a)).

### C. Dismissing, or In The Alternative, Severing Signature and Bellagio Promotes Fairness and Judicial Efficiency.

Pursuant to Rule 21, "the court may at any time, on just terms, add or drop a party" and "may also sever any claim against a party." *Schreckengost v. Nev. ex rel. Nev. Dep't of Corr.*, No. 3:19-cv-00659-MMD-CLB ORDER, 2020 U.S. Dist. LEXIS 99615, at *5-6 (D. Nev. June 8, 2020) (quoting FRCP 21). Severance under Rule 21 is not limited solely to curing misjoinder of parties, given that the rule explicitly provides that the court may sever "any" claim against a party. *Schreckengost*, 2020 U.S. Dist. LEXIS 99615, at *5-6 (citing *Safeco Ins. Co. of America v. White House, Tenn.*, 36 F.3d 540, 545-46 (6th Cir. 1994)); *United States v. O'Neil*, 709 F.2d 361, 369 (5th Cir. 1983).

District courts have discretion in determining whether to drop a party. *See Rush v. Sport Chalet, Inc.*, 779 F.3d 973, 974 (9th Cir. 2015) (reviewing the district court's decision to sever under Rule 21 for abuse of discretion). A court may, in its discretion, join or sever claims even where the permissive joinder standard is met in the interests of avoiding prejudice and delay,

ensuring judicial economy, or safeguarding principles of fundamental fairness. *See, e.g., Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 521-22 (5th Cir. 2010).

Here, as discussed above, Signature and Bellagio are separate and distinct from Harrah's. Each is responsible for promulgating and enforcing their own policies and procedures. Similarly, the collective bargaining relationship that Signature and Bellagio have with Plaintiff is separate and distinct from that of Harrah's. Indeed, Harrah's collective bargaining agreement is different from those of Signature and Bellagio. The factual and legal arguments specific to each Defendant, including the events alleged in Plaintiff's Complaint and nature of the bargaining relationship (including past practice), will result in separate mini-trials which undermines judicial efficiency. *See LHF Prods. v. Boughton*, 299 F. Supp. 3d 1104, 1111 (D. Nev. 2017) (recognizing the presence of separate defenses and need for mini-trials on various issues warrants severing defendants). Further, given the unique nature of Signature and Bellagio from Harrah's, fairness dictates that Plaintiff's claims against Signature and Bellagio proceed in separate proceeding. Accordingly, severing Signature and Bellagio from Harrah's will promote fairness and judicial efficiency.

### IV.    CONCLUSION

Based on the foregoing, Defendants Signature and Bellagio respectfully request that the Court sever Plaintiff's claims against them from those asserted against Harrah's and dismiss Signature and Bellagio from the instant action.

DATED this 1st day of July, 2020.

JACKSON LEWIS P.C.

/s/ *Paul T. Trimmer*
PAUL T. TRIMMER
Nevada Bar No. 9291
JOSHUA A. SLIKER
Nevada Bar No. 12493
LYNN K. MCCHRYSTAL
Nevada State Bar No. 14739
300 S. Fourth Street, Ste. 900
Las Vegas, Nevada 89101

*Attorneys for Defendants
The Signature Condominiums, LLC, and Bellagio, LLC*

JACKSON LEWIS P.C.
LAS VEGAS

10

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I am an employee of Jackson Lewis P.C., and that on this 1st day of July, 2020, I caused to be served via the Court's CM/ECF Filing, a true and correct copy of the foregoing **MOTION TO DISMISS OR IN THE ALTERNATIVE TO SEVER** properly addressed to the following:

Paul L. More, SBN 9628
Sarah Varela, SBN 12886
Kim Weber, SBN 14434
McCRACKEN, STEMERMAN & HOLSBERRY, LLP
1630 South Commerce Street, Suite 1-A
Las Vegas, NV 89102
Tel: (702)386-5107
Fax: (702)386-9848
E-mail: pmore@msh.law

*Attorneys for Plaintiff*

　　　　　　　　　　　　　　　　　　　　　*/s/ Paul T. Trimmer*
　　　　　　　　　　　　　　　　　　　　　Employee of Jackson Lewis P.C.