FISHER & PHILLIPS LLP
MARK J. RICCIARDI, ESQ.
Nevada Bar No. 3141
BRIAN L. BRADFORD, ESQ.
Nevada Bar No. 9518
300 South Fourth Street
Suite 1500
Las Vegas, NV 89101
Telephone:   (702) 252-3131
Facsimile:  (702) 252-7411
mricciardi@fisherphillips.com

STOKES WAGNER ALC
JACQUELINE A. GODOY
Nevada Bar No. 11385
One America Plaza
600 West Broadway
Suite 910
San Diego, CA 92101
Telephone:   (619) 232-4261
jgodoy@stokeswagner.com

Attorneys for Defendant Harrah's Las Vegas, LLC
dba Harrah's Casino Hotel, Las Vegas

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| LOCAL JOINT EXECUTIVE BOARD OF LAS VEGAS,<br><br>Plaintiff,<br><br>vs.<br><br>HARRAH'S LAS VEGAS LLC; THE SIGNATURE CONDOMINIUMS LLC; BELLAGIO LLC,<br><br>Defendants. | Case No. 2:20-cv-01221-RFB-NJK<br><br>**MOTION TO DISMISS** |

Pursuant to Federal Rule of Civil Procedure 12(b)(1), Defendant Harrah's Las Vegas, LLC dba Harrah's Casino Hotel, Las Vegas (hereinafter "Harrah's"), respectfully moves this Court to Dismiss the above case on the grounds that the Complaint is barred by operation of the Norris-LaGuardia Act, 29 U.S.C. § 101, *et seq.* Harrah's shows as follows:

1. Harrah's is a resort hotel and casino located in Las Vegas, Nevada;

2. Plaintiff Local Joint Executive Board of Las Vegas (hereinafter "Union") is a labor organization that represents a large number of Harrah's employees pursuant to the National Labor Relations Act and its related federal legislation, 29 U.S.C. § 141, *et seq.*;

3. The Union and Harrah's have a longstanding history of collective bargaining over the wages, hours, and other terms and conditions of employment of the Union's members;

4. This bargaining most recently resulted in a collective bargaining agreement ("CBA") between the Union and Harrah's which became effective on June 1, 2018;

5. The CBA requires the Union and Harrah's to adjudicate their disputes through a grievance and arbitration procedure that can be expedited if appropriate;

6. On June 25, 2020, the Union filed a Grievance (hereinafter "Grievance") against Harrah's pursuant to the CBA, raising issues related to Harrah's practices concerning COVID-19. The Grievance concerns many of the same matters that are raised in the present lawsuit;

7. The Union and Harrah's (along with several of Harrah's corporate affiliates) process hundreds of CBA grievances each year. The parties have for years worked together cooperatively to schedule grievance meetings and arbitrations. Harrah's has been ready and willing to expedite the processing of the Grievance. Before a party can demand arbitration the CBA requires a meeting known as a Board of Adjustment (hereinafter "BOA"). The purpose of the Board of Adjustment is for the parties to attempt to resolve grievances before the dispute is escalated to arbitration. The CBA requires that at or before the BOA, the parties must "make full disclosure to each other of all facts and evidence then known to them which bear on the grievance." The Union's Grievance implies that it wishes to skip the BOA step. Harrah's is not willing to waive the BOA, which is an important and mandatory step in the grievance process. Harrah's has contacted the Union for the purpose of scheduling the BOA, but it has not yet been scheduled;

8. The Union commenced this action on July 29, 2020, by filing a "Complaint for Injunctive Relief and Abatement." The Complaint exclusively seeks equitable relief;

9. However, this Court lacks subject matter jurisdiction to hear the Union's Complaint. That is because the Norris-LaGuardia Act prohibits the federal courts from issuing injunctions in any case involving a labor dispute. 29 U.S.C. § 101. Moreover, the Union's claims for equitable relief do not seek to preserve the status quo ante pending the arbitration of its grievance, which is

2

FP 38252064.2

the only permissible grounds on which injunctive relief in aid of arbitration could be sought without contravening the Norris-LaGuardia Act. Thus, the Complaint should be dismissed pursuant to Fed.R.Civ.P. 12(b)(1);

10. As the Union's federal claims should be dismissed, there is no supplemental jurisdiction over the Union's state law nuisance claim and it too should be dismissed. To the extent that such jurisdiction does exist, the Union's injury claims are preempted by the exclusive remedy found in Nevada's Worker Compensation laws and any remaining workplace safety claims would be subject to the primary jurisdiction of Nevada OSHA.

## MEMORANDUM OF POINTS AND AUTHORITIES

### RELEVANT FACTS

As noted above, Harrah's is a resort hotel and casino located in Las Vegas. *See* Declaration of Matthew Krystofiak at ¶ 2, attached hereto as Exhibit "A" (hereinafter "Krystofiak Dec."). For many years, the Union has represented a large number of Harrah's employees for purposes of collective bargaining. *Id*. at ¶ 3. The Union and Harrah's are parties to a CBA, the relevant portions of which are submitted with this Motion. *Id*. at ¶ 4, and Exhibit 1 thereto. In this contract, both parties recognize that the speedy resolution of grievances is advantageous to both labor and management. Further, the CBA requires that "[a]ll grievances shall be adjusted exclusively in the following manners," after which a detailed process is described ending in final and binding arbitration, either expedited or formal. *See* Krystofiak Dec., Exhibit 1, Article 21 at pp. 76-77.

On June 25, 2020, the Union submitted a grievance to Harrah's. *Id*. at Exhibit 2. The grievance calls into question Harrah's procedures with respect to COVID-19. *See generally, id*. The Union and Harrah's (along with several of Harrah's corporate affiliates) process hundreds of CBA grievances each year. Krystofiak Dec.,¶ 6. The parties have for years worked together cooperatively to schedule grievance meetings and arbitrations. *Id*. Harrah's has been ready and willing to expedite the processing of the Grievance. *Id*.

When either party to the CBA asserts a grievance, before a party can demand arbitration, the CBA requires a meeting known as a Board of Adjustment (hereinafter "BOA"). *Id*. The purpose of the BOA is for the parties to attempt to resolve grievances before arbitration. *Id*. The CBA requires that at or before the BOA, the parties must "make full disclosure to each other of all

3

facts and evidence then known to them which bear on the grievance." *Id*. The reason for this is so that the parties to the grievance can fully understand the claims being made and can discuss those claims and potential resolutions before they have to undergo the formal (and time-consuming and expensive) arbitration process. *Id*. The Union's grievance notice appears to desire to ignore the BOA requirements and skip directly to arbitration. *Id*. However, that is not how the process works. Further, Harrah's is not willing to waive this important and mandatory step in the grievance process. *Id*. Harrah's believes that if the parties participate in the BOA process and the Union is able to see the information and evidence that Harrah's is prepared to disclose in that process in response to the Union's grievance, there is a legitimate possibility that they parties can quickly and efficiently resolve the grievance. Harrah's has contacted the Union for the purpose of scheduling the BOA, but it has not yet been scheduled. *Id*.

On June 29, 2020, four days after filing the Grievance (but after the Union held a press conference to publicize the Complaint that it would be filing), and instead of attempting to proceed with the process mandated in the CBA, the Union filed the instant "Complaint for Injunctive Relief and Abatement." (ECF No. 1). The Union did not serve the Complaint on Harrah's until July 7, 2020. (ECF No. 2). As it did in its grievance, the Union takes issue with Harrah's practices and rules concerning the prevention of COVID-19 in the workplace.

**ARGUMENT**

A.      The Complaint Should Be Dismissed for Lack of Subject Matter Jurisdiction.

A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears. *Laborers' Int'l Union of N. Am., Local 341 v. Main Bldg. Maint., Inc.*, 435 F. Supp. 3d 995, 999 (D. Alaska 2020) (citations omitted). "Once challenged, the party asserting subject matter jurisdiction has the burden of proving its existence." *Id*. (citations omitted). A Rule 12(b)(1) jurisdictional attack may be facial or factual – i.e., based entirely on the allegations of the complaint or based in part on evidence outside the pleadings. *Id*.

The Norris-LaGuardia Act, 29 U.S.C. § 101, *et seq*., "deprives federal courts of the jurisdiction to grant injunctive relief in labor disputes, except in limited circumstances." *N.Y. State Nurses Ass'n v. Montefiore Med. Ctr.*, 2020 WL 2097627, *1 (S.D.N.Y. May 1, 2020), quoting *Niagara Hooker Emps. Union v. Occidental Chem. Corp.*, 935 F.2d 1370, 1375 (2d Cir. 1991)

4

FP 38252064.2

(citing 29 U.S.C. § 101) ("No court of the United States … shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute, except in a strict conformity with the provisions of this chapter …").  As the Complaint in the instant case exclusively seeks injunctive relief, it is barred by the provisions of the Act.

An extremely limited exception to the Norris-LaGuardia Act exists where a party seeks injunctive relief in order to ***preserve the status quo*** pending arbitration, and it is evident that irreparable damage to the arbitral process would occur in the event injunctive relief were not granted.  *See, e.g.*, *Newspaper & Periodical Drivers' & Helpers' Union, Local 921 v. San Francisco Newspaper Agency*, 89 F.3d 629, 632 (9th Cir. 1996) (a party seeking such an injunction must show not only that the parties are subject to an arbitration agreement but also that "issuance of an injunction would be warranted under ordinary principles of equity"); *Boys Markets, Inc. v. Retail Clerks Union*, 398 U.S. 235 (1970) (facts showed that the employer was suffering irreparable injury due to union's violation of no-strike clause).

Courts have recognized two factors in determining if an action can be enjoined: (1) an explicit or implicit promise to preserve the status quo and (2) deleterious effect on arbitration.  The arbitration process is rendered meaningless <u>only</u> if any arbitral award in favor of the union would substantially fail to undo the harm occasioned by the lack of a status quo injunction.  The arbitral process is not rendered "meaningless," however, by the inability of an arbitrator to completely restore the status quo ante or by the existence of some interim damage that is irremediable.  "The 'frustration of arbitration' standard preserves the effectiveness of the arbitral process which the parties have agreed upon. By requiring more than a minimal showing of injury for the issuance of an injunction, the standard also guards against undue judicial interference with the employer's ability to make business decisions."  *Graphic Communications v. Bakersfield Californian*, 541 F. Supp. 2d 1117, 1120 (E.D. Cal. 2008), citing *Newspaper & Periodical Drivers, supra.*

*N.Y. State Nurses, supra*, is a case almost identical to the present one, in which a union sought to have the court enforce new policies to prevent the spread of COVID-19, while the employer responded that it was already doing so.  The district court in *N.Y. State Nurses* dismissed the complaint and encouraged the parties to negotiate their dispute.  "NYSNA does not seek to preserve the status quo.  Instead, it seeks to create a new status quo that gives the Union everything

5

(and more) it requests in the grievance. … Such relief would not be would not be in 'aid' of arbitration but ... would be in lieu of it." *N.Y. State Nurses, supra*, 2020 WL 2097627 at *3 (some punctuation omitted). "[T]he Court cannot say that the likelihood of infection (let alone death) in the absence of an injunction is so great as to render the arbitral process meaningless.  That is not to say that [the defendant] cannot or should not do more to protect [the plaintiff's members] than it is; it is merely to say that, under the parties' collective bargaining agreement, that is an issue for the arbitrator, not this Court, to decide." *Id.*, 2020 WL 2097627 at *3.

Similarly, the Union does not seek the preservation of the status quo between it and Harrah's.  Instead, the Union vociferously complains about the status quo, arguing that Harrah's is ineffectively implementing rules designed to combat the spread of COVID-19 and is inadequately enforcing them.  In sum, the Union is not requesting an Order from the Court that would preserve the status quo pending arbitration – it is asking the Court to substitute the Court's judgment for that of an arbitrator and create new rules that will, in the Union's view, provide employees with better protection from the spread of COVID-19.  This is an inappropriate use of the narrow *Boys Market* exception to the anti-injunction provision of the Norris-LaGuardia Act, 29 U.S.C. § 104.

Contrary to the Union's assertion, the arbitral process is not rendered meaningless by the inability of an arbitrator to completely restore the status quo ante or by the existence of some interim damage that is irremediable.  "Rather, for an injunction to issue at the union's behest, the irremediable injury in question must be such as to threaten the integrity of the arbitration process itself." *Niagara Hooker, supra*, 935 F.2d at 1378 (citations omitted, some punctuation altered). *See also Graphic Communications, supra.*  As discussed above, that is not the case here.

Moreover, the Union's avowed concern about irreparable damage is belied both by its failure to seek a Temporary Restraining Order and by its eight-day delay in serving the Complaint on Harrah's.  Obviously, if irreparable damage really were occurring, the Union would have acted more swiftly and decisively in applying for equitable relief.

If the Union in good faith wanted to obtain quick relief, it would have spent more time trying to negotiate these matters with Harrah's management instead of holding press conferences and then filing this spurious Complaint.  The Union did not even bother to attempt to schedule or participate in a BOA before filing the Complaint (or since).  If not resolved at a BOA, the parties

6

FP 38252064.2

can schedule a hearing on an expedited basis thereby providing a rapid resolution of the Union's Grievance and avoid the "irreparable damage" that the Complaint asserts. Yet the Union has rushed to Court in an effort to skip step one of the CBA's process. (*See* Krystofiak Dec. at ¶ 4 and Exhibit 1 at pp. 75-77).

In sum, the Union's purported federal claims should be dismissed for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1). As there is no surviving federal claim, the Court should not exercise supplemental jurisdiction over the Union's state law nuisance claim which also should be dismissed. 28 U.S.C. § 1367(c)(3).

B.  <u>For the Same Reasons, The Complaint Fails to State a Claim Upon Which Relief Can Be Granted; Moreover, the Plaintiff's Nuisance Claim is Likewise Without Merit</u>.

In reviewing a complaint under Rule 12(b)(6), all well-pleaded allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. *Hill v. Genuine Parts Co.*, 2019 WL 935976, at *1 (E.D. Cal. Feb. 26, 2019). A complaint may be dismissed as a matter of law for one of two reasons: (1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal claim. *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015).

As discussed above, the Complaint fails to state a claim for relief. The Complaint acknowledges that the parties are bound to arbitrate disputes and fails to identify legitimate grounds to seek injunctive relief in aid of arbitration.

The Union's state law nuisance claim fares no better, even if this Court were able to exercise jurisdiction over it. The Complaint alleges in paragraph 94 that Harrah's action or non-action in the workplace "unreasonably created and substantially assisted in creating a grave risk to Joint Board members' health and safety." The Nevada Workers' Compensation law, however, provides that claims under that statute are the exclusive remedy for employees complaining of on-the-job injuries. NRS 616A.20(1) ("The rights and remedies provided in chapters 616A to 616D, inclusive, of NRS for an employee on account of an injury by accident sustained arising out of and in the course of the employment shall be exclusive, except as otherwise provided in those chapters, of all other rights and remedies of the employee, his or her personal or legal representatives, dependents or next of kin, at common law or otherwise, on account of such injury."); *Wood v. Safeway*, 121 Nev. 724, 729 (2005) ("The NIIA provides the exclusive remedy for employees injured on the job,

and an employer is immune from suit by an employee for injuries 'arising out of and in the course of employment.'").

To the extent that any workplace safety issues remain, Nevada OSHA would be the agency to investigate and order a remedy. NRS 618.015 *et seq*.

To support its claims of an unsafe workplace the Union's Complaint cites reports from numerous government agencies and articles from medical journals. The Union proffers to the Court a massive amount of technical data and expects the Court, pursuant to a *public nuisance statute*, to analyze Harrah's already comprehensive and fully compliant plan and draft an injunction containing revisions to that plan—or perhaps draft an entirely new plan more to the Union's liking. Such an approach makes no sense from either a legal or practical standpoint. Nevada OSHA, the agency charged with regulating workplace safety, includes pages and pages of resources and regulations on its web page: http://dir.nv.gov/OSHA/Nevada_OSHA_COVID-19_Resource_Page/. It is beyond dispute that a highly technical and complicated issue like the review of a COVID-19 workplace plan is best dealt with by an agency with special expertise. In this case the Court should defer to and recognize the primary jurisdiction of Nevada OSHA.

The doctrine of primary jurisdiction requires that courts should sometimes refrain from exercising jurisdiction so that technical issues can first be determined by an administrative agency. *Kapplemann v. Delta Air Lines*, 539 F.2d 165, 168–169 (C.A.D.C.1976). In Kapplemann, the court articulated two policies advanced by the traditional primary jurisdiction doctrine: "(1) the desire for uniformity of regulation and, (2) the need for an initial consideration by a tribunal with specialized knowledge." Kapplemann, 539 F.2d at 169. The Nevada Supreme Court has expressly adopted the *Kapplemann* approach. *Sports Form v. Leroy's, 832 P. 2d 901 (1992), Richardson v. Clark County School District,* 156 P.3d 21 (2007).

The Court should exercise its discretion an dismiss this claim based on the primary jurisdiction of Nevada OSHA.

/ / /

/ / /

/ / /

/ / /

8

FP 38252064.2

# CONCLUSION

For all of the foregoing reasons, Defendant Harrah's respectfully requests that this Court dismiss this case

DATED: July 27, 2020

                        FISHER & PHILLIPS LLP

                        BY: */s/ Mark J. Ricciardi, Esq.*
                        MARK J. RICCIARDI, ESQ.
                        BRIAN L. BRANDFORD, ESQ.
                        300 South Fourth Street, Suite 1500
                        Las Vegas, Nevada 89101

                        STOKES WAGNER ALC
                        JACQUELINE A. GODOY
                        Nevada Bar No. 11385
                        One America Plaza
                        600 West Broadway
                        Suite 910
                        San Diego, CA 92101

                        Attorney for Defendant Harrah's Las Vegas, LLC
                        dba Harrah's Casino Hotel, Las Vegas

FP 38252064.2

# **CERTIFICATE OF ELECTRONIC SERVICE**

This is to certify that on the 27th day of July 2020, the undersigned, an employee of Fisher & Phillips LLP, electronically filed the foregoing Motion to Dismiss with the U.S. District Court, and a copy was electronically transmitted from the court to the e-mail address on file for:

Paul L. More
Sarah Varela
Kim Weber

By: */s/ Sarah Griffin*
An employee of Fisher & Phillips LLP

FP 38252064.2